# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

TERRANCE LEDERR LAVOLL,

    Plaintiff,

vs.

D. W. NEVEN, et al.,

    Defendants.

Case No. 2:08-CV-00011-PMP-(GWF)

**ORDER**

    Before the court are the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (#7), respondents' answer (#35), and petitioner's reply (#40). The court finds that relief is not warranted, and the court denies the petition.

    After a jury trial in the Eighth Judicial District Court of the State of Nevada, petitioner was convicted of one count of sexual assault on a minor under the age of sixteen years, two counts of sexual assault on a minor under the age of sixteen years with the use of a deadly weapon, and one count of solicitation of a minor to engage in acts that constitute the crime against nature. Ex. 21 (#23). Petitioner appealed, and the Nevada Supreme Court affirmed. Ex. 59 (#25). Petitioner then filed in state court a post-conviction habeas corpus petition. Ex. 68 (#25). The district court denied the petition. Ex. 105 (#26). Petitioner appealed, and the Nevada Supreme Court affirmed. Ex. 122 (#26).

    Petitioner then commenced this action. Respondents moved to dismiss (#21) grounds 1, 3, 5, 7, 9, and 10 of the petition (#7). Respondents argued that petitioner procedurally defaulted those grounds because he could have raised them on direct appeal but did not. Petitioner

did not oppose the motion. The court agreed with respondents that those grounds were procedurally defaulted, and the court dismissed those grounds. Order (#28). The state-law reason for the dismissal of those grounds is independent of federal law and adequate for a procedural default. Vang v. Nevada, 329 F.3d 1069, 1074 (9th Cir. 2003). Cause and prejudice to excuse the procedural default were never at issue because petitioner did not oppose the motion to dismiss (#21). Consequently, reasonable jurists would not find the court's conclusion to be debatable or wrong, and the court will not issue a certificate of appealability on the dismissal of grounds 1, 3, 5, 7, 9, and 10 as procedurally defaulted.

"A federal court may grant a state habeas petitioner relief for a claim that was adjudicated on the merits in state court only if that adjudication 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,'" Mitchell v. Esparza, 540 U.S. 12, 15 (2003) (quoting 28 U.S.C. § 2254(d)(1)), or if the state-court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

> A state court's decision is "contrary to" our clearly established law if it "applies a rule that contradicts the governing law set forth in our cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." A state court's decision is not "contrary to . . . clearly established Federal law" simply because the court did not cite our opinions. We have held that a state court need not even be aware of our precedents, "so long as neither the reasoning nor the result of the state-court decision contradicts them."

Id. at 15-16. "Under § 2254(d)(1)'s 'unreasonable application' clause . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003) (internal quotations omitted).

> [T]he range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result,

> evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004).

In all surviving grounds for relief, petitioner claims that counsel provided ineffective assistance. "[T]he right to counsel is the right to the effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 & n.14 (1970). A petitioner claiming ineffective assistance of counsel must demonstrate (1) that the defense attorney's representation "fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694. "[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697.

Strickland expressly declines to articulate specific guidelines for attorney performance beyond generalized duties, including the duty of loyalty, the duty to avoid conflicts of interest, the duty to advocate the defendant's cause, and the duty to communicate with the client over the course of the prosecution. 466 U.S. at 688. The Court avoided defining defense counsel's duties so exhaustively as to give rise to a "checklist for judicial evaluation of attorney performance. . . . Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." Id. at 688-89.

Review of an attorney's performance must be "highly deferential," and must adopt counsel's perspective at the time of the challenged conduct to avoid the "distorting effects of hindsight." Strickland, 466 U.S. at 689. A reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the

defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. (citation omitted).

The Sixth Amendment does not guarantee effective counsel per se, but rather a fair proceeding with a reliable outcome. See Strickland, 466 U.S. at 691-92. See also Jennings v. Woodford, 290 F.3d 1006, 1012 (9th Cir. 2002). Consequently, a demonstration that counsel fell below an objective standard of reasonableness alone is insufficient to warrant a finding of ineffective assistance. The petitioner must also show that the attorney's sub-par performance prejudiced the defense. Strickland, 466 U.S. at 691-92. There must be a reasonable probability that, but for the attorney's challenged conduct, the result of the proceeding in question would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

If a state court applies the principles of Strickland to a claim of ineffective assistance of counsel in a proceeding before that court, the petitioner must show that the state court applied Strickland in an objectively unreasonable manner to gain federal habeas corpus relief. Woodford v. Visciotti, 537 U.S. 19, 25 (2002) (per curiam).

In ground 2, petitioner argues that counsel provided ineffective assistance because counsel did not investigate whether the justice court had jurisdiction over petitioner. On this issue, the Nevada Supreme Court held:

> First, appellant claimed that his trial counsel was ineffective for failing to assert that the district court was without jurisdiction as the State failed to file a complaint at appellant's first appearance in the justice court. He asserted that NRS 171.178(4) mandated that a complaint must have been filed when he was presented before the magistrate for the first time. Appellant did not establish that his counsel was deficient or that he was prejudiced by his counsel's actions. Appellant appeared before the justice court within forty-eight hours of his arrest, and the justice court determined that appellant's arrest was supported by probable cause. The justice court further ordered the State to file a complaint within four days. The State filed a complaint, and later filed an amended complaint, and the justice court bound over appellant based on the charges in the amended complaint after a preliminary hearing. Appellant failed to demonstrate that the district court did not have jurisdiction to proceed because the State had not filed a complaint by the time appellant was first presented in the justice court. Therefore, the district court did not err in denying this claim.

Exhibit 122, pp. 3-4 (#26) (citing, inter alia, County of Riverside v. McLaughlin, 500 U.S. 44, 56 (1991)) (footnotes omitted). The Nevada Supreme Court identified the relevant constitutional

principle established by the Supreme Court of the United States, that a magistrate must make a determination of probable cause within 48 hours of a warrantless arrest. The Nevada Supreme Court also was correct in noting that such a determination was made within that time. Regarding the timing of the filing of the complaint, the Nevada Supreme Court's interpretation of state law is final. Given that the underlying ground had no merit, the Nevada Supreme Court's determination that counsel did not provide ineffective assistance was a reasonable application of Strickland. Reasonable jurists would not find this court's determination to be debatable or wrong, and the court will not issue a certificate of appealability on the issue.

Ground 4 has two components. First, petitioner argues that counsel should have objected to the filing of the amended information. On this issue, the Nevada Supreme Court held:

> Second, appellant claimed that his trial counsel was ineffective for failing to object to the filing of the amended information that added a charge inadvertently omitted from the original information. Appellant failed to establish that his counsel was deficient or that he was prejudiced by his counsel's actions. At the preliminary hearing, the district [sic] court found that there was probable cause to proceed to trial on all four counts of the amended complaint. Several days later, the State filed an information that omitted the first count of the amended complaint. Then, on the first day of trial, the State filed an amended information to include all of the counts in the amended complaint, the counts upon which the justice court had bound over appellant. The amended information merely corrected a clerical error within the original information prepared by the State. Therefore, the filing of the amended information did not add an "additional or different offense," to those for which appellant had already been bound over and provided notice. Further, as he was aware of the amended count, appellant's substantial rights were not prejudiced. Therefore, the district court did not err in denying this claim.

Ex. 122, pp. 4-5 (#26) (citing Nev. Rev. Stat. § 173.095(1)) (footnote omitted). The original criminal complaint against petitioner had three counts, with the victims' initials in parentheses:[1]

> Count I: Sexual assault with a minor under sixteen years of age with use of a deadly weapon (E. H.);
> Count II: Sexual assault with a minor under sixteen years of age with use of a deadly weapon (I. B.);
> Count III: Solicitation of minor to engage in acts constituting crime against nature (N. B.).

Ex. 3 (#23). Before the preliminary hearing in the justice court, the prosecution filed an amended criminal complaint with a new first count and the original three counts renumbered accordingly:

---

[1]Pursuant to Special Order 108, the Court has redacted the names of the minor victims.

>Count I: Sexual assault with a minor under sixteen years of age (E. H.);
>Count II: Sexual assault with a minor under sixteen years of age with use of a deadly weapon (E. H.);
>Count III: Sexual assault with a minor under sixteen years of age with use of a deadly weapon (I. B.);
>Count IV: Solicitation of minor to engage in acts constituting crime against nature (N. B.).

Id. At the preliminary hearing, the justice of the peace bound petitioner over for trial on all four counts of the amended complaint. Ex. 4, p. 73 (#23). The written commitment and order to appear reflect the verbal order of the justice of the peace. Ex. 5 (#23). The prosecution then used erroneously the original criminal complaint as the basis for filing the original information in the state district court, because the original information contained only the three counts of the original criminal complaint. See Ex. 8 (#23). Right before trial, the prosecution filed an amended information that contained all four counts on which petitioner was bound over for trial. Ex. 10 (#23). In a colloquy on the matter, defense counsel Craig Jorgenson admitted that he knew that the original information was missing a count, and Jorgenson hoped that the prosecution would not notice the omission. He stated that he was not objecting to the filing of the amended information because he knew about the omitted count. Ex. 11A, p. 5 (#23). At the evidentiary hearing in the state habeas corpus proceedings, Jorgenson showed that he knew about the background behind the prosecution's error and ultimate correction of that error. Ex. 103, pp. 15-16 (#26). The Nevada Supreme Court's determinations of fact were reasonable in light of the evidence in the record. 28 U.S.C. § 2254(d)(2). Given that there was nothing for counsel to object, the Nevada Supreme Court's determination that counsel did not provide ineffective assistance was a reasonable application of Strickland. Reasonable jurists would not find this conclusion to be debatable or wrong, and the court will not issue a certificate of appealability on the matter.

In the second part of ground 4, petitioner argues that counsel should have objected to the amendment of the information because the amendment introduced evidence of prior uncharged acts. Respondents correctly note that because the conduct at issue was the subject of Count I of the amended information, by definition it cannot be evidence of an uncharged act. Answer, p. 11 (#35). On this issue, the Nevada Supreme Court held similarly:

> Third, appellant claimed that his trial counsel was ineffective for failing to file motions to discover his prior bad acts and prevent the State from introducing those acts into evidence. Specifically, he asserted that the conduct charged in Count 1 of the amended information should not have been introduced into evidence. Appellant failed to establish that his counsel was deficient or that he was prejudiced. We have said "that the use of uncharged bad act evidence to convict a defendant is heavily disfavored." However, the evidence related to the acts described in Count 1, did not relate to an uncharged bad act, but to a charged crime. Therefore, the district court did not err in denying this claim.

Ex. 122, pp. 5-6 (#26) (footnote omitted). Given that the evidence presented in support of Count I was evidence of a charged act, the Nevada Supreme Court reasonably applied Strickland when it held that counsel did not provide ineffective assistance when he did not object to the use of evidence of prior uncharged acts. Reasonable jurists would not find this conclusion to be debatable or wrong, and the court will not issue a certificate of appealability on the issue.

In ground 6, petitioner claims that counsel provided ineffective assistance because counsel did not object to jury instructions regarding reasonable doubt, sexual assault, solicitation of a minor to engage in acts constituting the crime against nature, and the use of a deadly weapon. Ex. 14 (#24) contains the instructions.

On the reasonable doubt instruction, the Nevada Supreme Court held:

> Fourth, appellant claimed that his trial counsel was ineffective for failing to object to the jury instruction for reasonable doubt. Appellant failed to demonstrate that his counsel's performance was deficient or that he was prejudiced. The district court gave Nevada's statutory reasonable doubt instruction as set forth in and mandated by NRS 175.211. This court has repeatedly held that the current statutory definition is constitutional. Therefore, the district court did not err in denying this claim.

Ex. 122, p. 6 (footnotes omitted) (#26). Jury instruction 5 defined reasonable doubt. See Ex. 14 (#24). This instruction is exactly the same as the instruction that the United States Court of Appeals for the Ninth Circuit determined was constitutional. Ramirez v. Hatcher, 136 F.3d 1209, 1211-15 (9th Cir. 1998). That court has also held that the issue is not worthy of a certificate of appealability. Nevius v. McDaniel, 218 F.3d 940, 944-45 (9th Cir. 2000). The Nevada Supreme Court reasonably applied Strickland when it determined that the lack of objection to the reasonable doubt instruction was not ineffective assistance of counsel. Reasonable jurists would not find this conclusion to be debatable or wrong, and the court will not issue a certificate of appealability on the issue.

-7-

On the instructions regarding sexual assault and solicitation, the Nevada Supreme Court held:

> Fifth, appellant claimed that his trial counsel was ineffective for failing to object to the jury instructions for sexual assault and solicitation of a minor. Specifically, appellant claimed that (1) the instruction for sexual assault was defective as it failed to define "sexual aberration," and (2) the solicitation and sexual assault instructions, when read together, improperly implied that the crime of sexual assault was gender neutral. Appellant failed to demonstrate that his trial counsel's performance was deficient or that he was prejudiced. The district court gave instructions for sexual assault and solicitation of a minor that followed the language of the statutes. In addition the terms used to define and penalize sexual assault are gender neutral. Thus, appellant could be convicted for the sexual assault of a male victim. Therefore, the district court did not err in denying this claim.

Ex. 122, pp. 6-7 (citing Nev. Rev. Stat. §§ 200.366(1), 200.364(2), 201.195) (footnotes omitted) (#26). Jury instruction 11 defined sexual assault and sexual penetration. See Ex. 14 (#24). The instruction followed the language of Nev. Rev. Stat. § 200.366(1) (sexual assault) and Nev. Rev. Stat. § 200.364(1) (sexual penetration) that were in effect at the time. Jury instruction 17 defined solicitation of a minor to commit the infamous crime against nature. See Ex. 14 (#24). Again, the instruction followed the language of Nev. Rev. Stat. § 201.195. Petitioner's argument about the definition of "sexual aberration" has no basis. "Sexual aberration" is not an element of either sexual assault or solicitation of a minor to commit the infamous crime against nature. Furthermore, the phrase "sexual aberration" appears nowhere in the instructions, and thus there was no need to define the term.

On the instruction regarding use of a deadly weapon, the Nevada Supreme Court held:

> Sixth, appellant claimed that his trial counsel was ineffective for failing to object to the district court's instructions for the use of a deadly weapon. He claimed that the district court erred by instructing the jury about general intent where specific intent to sexual assault the victim with the use of a deadly weapon is necessary to convict. Appellant failed to establish that his counsel was deficient or that he was prejudiced. The district court correctly instructed the jury that sexual assault is a general intent crime. The court also correctly instructed the jury on the use of a deadly weapon. The crime of sexual assault did not become a specific intent crime merely because the State alleged that appellant used a deadly weapon during the commission of the crime. Therefore, the district court did not err in denying this claim.

Ex. 122, p. 7 (citing Winnerford H. v. State, 915 P.2d 291, 294 (Nev. 1996), and Allen v. State, 609 P.2d 321, 322 (Nev. 1980)) (footnotes omitted). In Allen, the Nevada Supreme Court held, "In

-8-

order to 'use' a deadly weapon for purposes of NRS 193.165, there need not be conduct which actually produces harm but only conduct which produces a fear of harm or force by means or display of the deadly weapon in aiding the commission of the crime." 609 P.2d at 322. Jury instruction 15 followed the language of Allen. See Ex. 14 (#24).

Objections to the instructions defining sexual assault, solicitation of a minor, and the use of a deadly weapon would not have succeeded. The Nevada Supreme Court reasonably applied Strickland when it held that the lack of objection was not ineffective assistance of counsel. Reasonable jurists would not find this conclusion to be debatable or wrong, and the court will not issue a certificate of appealability on this issue.

In one sentence, petitioner also argues that counsel was ineffective because he asked for an instruction on statutory sexual seduction. Statutory sexual seduction is a lesser included offense of sexual assault, and it is common to ask for instructions on lesser included offenses. At any rate, the jury found petitioner guilty of all charged counts of sexual assault, and thus the instruction for the lesser included offense caused him no prejudice. Reasonable jurists would not find this conclusion to be debatable or wrong, and the court will not issue a certificate of appealability on this issue.

In ground 8, petitioner claims that counsel provided ineffective assistance because he did not object to the introduction of photographs. The photographs are of two boys holding a gun, and one boy holding an alcoholic drink, in petitioner's residence. The two boys did not testify at trial. On this issue, the Nevada Supreme Court held:

> Seventh, appellant claimed that his trial counsel was ineffective for failing to object to the introduction of the photographs of appellant's bedroom with underage boys holding a firearm and an alcoholic beverage. Appellant argued that the pictures were prejudicial and were improperly admitted through E. H., as he was not depicted in the pictures and could not testify to the authenticity of the gun or beverage. Appellant failed to establish that his counsel was deficient or that he was prejudiced by his counsel's failure to object to the introduction of the evidence. E. H. testified that he had been to appellant's home, spent the night in appellant's room with A. P. and C. L., played with appellant's firearm, and drank alcoholic beverages while at appellant's home. E. H. had personal knowledge of the identities of those pictures, appellant's room, appellant's firearm, and the liquor he ingested. E. H. could identify the people, the room, the firearm, and the liquor bottle in a photograph and thus, authenticate the photographs for admission. Further, the photographs were relevant as they depicted the methods, about which E. H. testified, that appellant employed to gain the trust of boys prior to sexually assaulting them. Moreover,

> appellant did not demonstrate that the conduct pictured in the photographs was so prejudicial that it substantially outweighed the photographs' probative value. Therefore, the district court did not err in denying this claim.

Exhibit 122, pp. 8-9 (#26) (footnotes omitted). The Nevada Supreme Court has held that the photographs were admissible evidence of other acts pursuant to Nev. Rev. Stat. § 48.045. Ground 7 was the claim that the photographs should not have been admitted. Petitioner procedurally defaulted that claim. For the purposes of this order, the court assumes that the photographs were admissible. Given that an objection to the admission of the photographs could not succeed, counsel did not provide ineffective assistance by a lack of objection. The Nevada Supreme Court reasonably applied Strickland. Reasonable jurists would not find this conclusion to be debatable or wrong, and the court will not issue a certificate of appealability on this issue.

In ground 11, petitioner claims that counsel was ineffective for failing to object to cumulative punishments, namely, the equal and consecutive sentences imposed for use of a deadly weapon in Counts II and III. The Fifth Amendment's protection against double jeopardy does not necessarily preclude cumulative punishments for a single prosecution. Missouri v. Hunter, 459 U.S. 359, 366 (1983). On this issue, the Nevada Supreme Court held:

> Fifteenth, appellant claimed that his trial counsel was ineffective for failing to challenge the constitutionality of NRS 193.165. He asserted that the statute resulted in cumulative punishments that violated double jeopardy. This court stated that the deadly weapon enhancements set forth in NRS 193.165 "does not create any separate offense but provides an additional penalty for the primary offense," and thus, did not violate the double jeopardy clause. As the statute was constitutional, appellant was not prejudiced by counsel's failure to raise an objection to it. Therefore, the district court did not err in denying his claim.

Exhibit 122, pp. 14-15 (#26) (footnotes omitted). In an earlier case, the Nevada Supreme Court held:

> In Missouri v. Hunter, 459 U.S. 359 (1983), the United States Supreme Court held that the double jeopardy clause of the United States Constitution does not preclude a state legislature from imposing cumulative punishments for a single offense. The Court stated: "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." Id. at 366. . . .
>
> As noted above, NRS 193.165 clearly evidences a legislative intent to impose separate penalties for a primary offense and for the use of a deadly weapon in the commission of the offense. The statute imposes a separate term of imprisonment "equal to and in addition to" the term of imprisonment imposed for the primary

> offense. This separate prison term must be served consecutively to the term of imprisonment imposed for the primary offense, and the legislature expressly declared that NRS 193.165(1) "provides an additional penalty for the primary offense." NRS 193.165(2). When the intention of the legislature is clear, it is the duty of this court to give effect to such intention and to construe the language of the statute so as to give it force and not nullify its manifest purpose.

Nevada Dept. of Prisons v. Bowen, 745 P.2d 697, 699 (Nev. 1987). The Nevada Supreme Court reasonably applied Hunter when it determined that the deadly weapon enhancement does not violate the Fifth Amendment. Consequently, an objection would not have succeeded, and thus the Nevada Supreme Court reasonably applied Strickland. Reasonable jurists would not find this conclusion to be debatable or wrong, and the court will not issue a certificate of appealability on this issue.

In ground 12, petitioner claims that appellate counsel provided ineffective assistance by not raising on direct appeal the issues contained in the procedurally defaulted grounds 1, 3, 5, 7, 9, and 10. On the issues contained in grounds 1, 3, 5, and 7, the Nevada Supreme Court held:

> First, appellate claimed that his appellate counsel was ineffective (1) for failing to argue that the district court lacked jurisdiction to convict him because the State had not filed a complaint at the time the [sic] of his initial appearance, (2) for failing to argue that the prosecution improperly amended the information on the day of trial, (3) for failing to argue that the jury instructions were erroneous, and (4) for failing to argue that the photographs were improperly admitted. For the reasons discussed above, we conclude that appellant did not establish that his appellate counsel was ineffective for failing to raise these issues. Therefore, the district court did not err in denying these claims.

Ex. 122, pp. 16-17 (#26). This was a reasonable application of Strickland for the reasons stated above in grounds 2, 4, 6, and 8.

Next, petitioner claims that appellate counsel should have raised the issue presented in ground 9. Ground 9 was a claim that hearsay was erroneously admitted. Petitioner's claim was vague and conclusory, because he did not allege the specific instances of hearsay. The proper-person supporting memorandum to his state habeas corpus petition, Ex. 69 (#25), is identical; in fact, the petition (#7) in this action is a photocopy of his supporting memorandum. The supplements to his state habeas corpus petition, Exhibits 93 and 97 (#26), do not elaborate on the hearsay claim. On this issue, the Nevada Supreme Court held:

> Third, appellant claimed that his appellate counsel was ineffective for failing to argue that the district court erred in permitting the introduction of hearsay. Specifically, appellant claimed that his counsel should have argued on appeal that N.

-11-

> B.'s testimony that appellant "asked [N. B.] if [appellant] could suck [N. B.'s] penis" was hearsay. Appellant failed to show that his counsel was deficient or that he was prejudiced. As N. B. testified about what appellant said to N. B., the testimony was not hearsay. Therefore, the district court did not err in denying this claim.

Ex. 122, p. 18 (#26) (footnotes omitted). In an omitted footnote, the Nevada Supreme Court noted that petitioner raised a general claim that all of the victims' testimonies were based upon hearsay, but that petitioner identified specifically only one statement. It is unclear from the state-court record where petitioner raised that specific statement as an example of objectionable hearsay. Nonetheless, given that the example is not hearsay, the Nevada Supreme Court reasonably applied Strickland in holding that petitioner had failed to show that counsel was deficient or that petitioner was prejudiced by a lack of objection to that statement. The Nevada Supreme Court's determination that the general claim of hearsay does not identify specific statements is also a reasonable application of clearly established federal law, because petitioner did not prove deficient performance of counsel or prejudice with such a vague claim.

       Next, petitioner claims that appellate counsel should have raised the issues presented in Ground 10. Ground 10 contained three claims. First, the consecutive sentences for use of a deadly weapon violated the prohibition against double jeopardy. The court's disposition of ground 11 also disposes of this claim. Second, insufficient evidence existed to establish that petitioner used a deadly weapon in the commission of the crimes. The record belies this claim, because appellate counsel did raise a claim that the evidence was insufficient to support the verdicts on the use of a deadly weapon, and the Nevada Supreme Court rejected that claim. See Ex. 59, pp. 4-5 (#25). Third, the order of restitution violated the prohibition against double jeopardy. Nevada authorizes the judge to impose restitution where appropriate. Nev. Rev. Stat. § 176.033(1)(c). As with the consecutive sentence for the use of a deadly weapon, the intent of the legislature governs whether the imposition of restitution violates the prohibition of double jeopardy. Given that the legislature of Nevada has authorized restitution, the judge's imposition of restitution did not violate the Double Jeopardy Clause. See Missouri v. Hunter, 459 U.S. at 366. Consequently, counsel did not perform deficiently, and petitioner was not prejudiced, by the lack of objection to restitution. Reasonable

1 jurists would not find this conclusion to be debatable or wrong, and the court will not issue a
2 certificate of appealability on this issue.

3      In ground 13, petitioner claims that counsel provided ineffective assistance by
4 conceding petitioner's guilt on the lesser included offense of statutory sexual seduction.

> 3. "Statutory sexual seduction" means:
> (a) Ordinary sexual intercourse, anal intercourse, cunnilingus or fellatio committed by a person 18 years of age or older with a person under the age of 16 years; or
> (b) Any other sexual penetration committed by a person 18 years of age or older with a person under the age of 16 years with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of either of the persons.

9 Nev. Rev. Stat. § 200.364. On this issue, the Nevada Supreme Court held:

> Eighth, appellant claimed that his trial counsel was ineffective for conceding his guilt during closing arguments. He asserted that his counsel erred in asserting that statutory sexual seduction was the appropriate conviction instead of sexual assault. Appellant stated in his affidavit that he did not consent to his counsel's concession.
>
> Appellant failed to establish that his counsel was deficient or that he was prejudiced. Appellant did not testify at trial. Thus, trial counsel's concession did not undermine any testimony by appellant. Further, the record supports the concession as part of the defense strategy. Trial counsel's cross-examination focused on whether the victims consented to the acts performed by appellant; therefore, trial counsel's closing argument was consistent with the defense strategy at trial. At the evidentiary hearing, appellant's post-conviction counsel did not ask appellant's trial counsel whether appellant consented to the closing argument. In light of appellant's single averment, which contradicted the apparent trial strategy, and the lack of development of further evidence at the evidentiary hearing despite the opportunity to do so, we conclude that the district court did not err in denying appellant's claim as he failed to meet his evidentiary burden of showing that his counsel was ineffective.

19 Exhibit 122, pp. 9-10 (#26) (footnotes omitted). Counsel's strategy must be put into the context of
20 the case. In its decision on direct appeal, the Nevada Supreme Court accurately summarized the
21 facts of the case:

> On July 7, 1997, Lavoll approached [N. B.] and propositioned him for oral sex. When [N. B.] refused, Lavoll began to tap his fingers against a gun that he wore for his employment as a security guard. Lavoll propositioned [N. B.] once again, at which time, [N. B.] stated that he would think about it. It is from this incident that Lavoll is charged with solicitation of a minor to engage in acts constituting crimes against nature.
>
> On or about that same day, Lavoll stayed overnight with [E. H.] and [E. H.'s] friend, at the friend's home. On this night, Lavoll approached [E. H.] and requested that [E. H.] allow Lavoll to perform oral sex upon him. After initially being rebuffed by [E. H.], Lavoll persisted until [E. H.] no longer refused, at which time Lavoll performed oral sex upon [E. H.]. [E. H.] testified that he agreed to allow Lavoll to perform oral

> sex upon him because he was afraid that Lavoll would retrieve his gun. Lavoll was charged with one count of sexual assault stemming from this incident.
>
> On the following day, July 8, 1997, the three victims accompanied Lavoll to a nearby fast food restaurant. Lavoll then solicited the two brothers, [I. B. and N. B.] for oral sex, telling [N. B.] that [I. B.] would agree to allow Lavoll to perform oral sex upon him if [N. B.] would agree to the same. [N. B.] declined the offer and retreated to a friend's house, leaving [E. H. and I. B.] behind with Lavoll.
>
> After [N. B.'s] departure, Lavoll, and [E. H. and I. B.] walked to a vacant lot behind a supermarket. While in the vacant lot, Lavoll performed oral sex upon both [E. H. and I. B.] twice. Both [E. H. and I. B.] testified that they were intimidated because they knew that Lavoll carried a gun, and felt that they could not refuse Lavoll's advances. For this incident, Lavoll was charged with two counts of sexual assault with use of a deadly weapon.
>
> After leaving the vacant lot, [E. H. and I. B.] returned to their respective homes and [N. B.] confronted his brother, [I. B.], about Lavoll. [N. B.] then reported what had transpired to his parents and the boys' parents then contacted [E. H.'s] mother. The police were notified and Lavoll was arrested without incident.

Ex. 59, pp. 2-3 (#25).[2] Jorgenson and petitioner faced a dilemma: If the jury believed the victims, then petitioner was guilty. There are no affirmative defenses, no justifications, no excuses to the crimes charged that would have led to an acquittal. The prosecution presented a strong case to the jury. Each victim's testimony was consistent both with his own prior statements and with the trial testimonies of the other victims. Jorgenson was unable to develop any inconsistencies or other issues that could have diminished any victim's credibility. Supporting the victims' testimonies were petitioner's statements to police officers: He admitted everything but the criminal sexual acts, which he denied committing. A jury could easily disregard petitioner's denials as self-serving, based upon the other evidence presented at trial. In short, a defense argument that the prosecution had not proven its case would have been futile..

On the other hand, Jorgenson's strategy, if successful, would have resulted in a sentence much more favorable to petitioner. By law, the victims could not consent to the sexual acts that petitioner performed upon them. However, by asking for an instruction on the lesser-included offense of statutory sexual seduction and by arguing that the victims were willing

---

[2] The court has modified the manner in which the Nevada Supreme Court redacted the victims' names to be consistent with other quotations and this court's own manner of redaction.

-14-

participants in the sexual acts, Jorgenson was hoping that the jury would find petitioner guilty of statutory sexual seduction instead of sexual assault upon a minor. The penalty for sexual assault upon a minor is severe, and the deadly-weapon enhancement makes the penalty even more severe. Petitioner is serving five consecutive terms of life imprisonment with eligibility for parole on each term beginning after twenty years. In contrast, for a person of petitioner's age at the time committing statutory sexual seduction carries a minimum sentence no less than one year and a maximum sentence of no more than five years. Nev. Rev. Stat. §§ 200.368, 193.130. Furthermore, the use of a deadly weapon was not a question presented to the jury with respect to statutory sexual seduction. See Ex. 15 (#24). If Jorgenson had persuaded the jury, then petitioner would have served no more than 15 years in prison. Under those circumstances, the Nevada Supreme Court reasonably applied Strickland. Reasonable jurists would not find this conclusion to be debatable or wrong, and the court will not issue a certificate of appealability.

In ground 14, Petitioner claims that counsel provided ineffective assistance by not moving for a mistrial after the court clerk cried during the testimony of one of the victims. Respondents note that the transcript of the trial has no evidence that the court clerk cried. Respondents also noted that petitioner had the opportunity in his state evidentiary hearing, at which he was represented by counsel, to develop the facts behind this claim, but he did not. On this issue, the Nevada Supreme Court held:

> Ninth, appellant claimed that his trial counsel was ineffective for failing to move for a mistrial when the court clerk cried in front of the jury during the victim's testimony. Appellant failed to establish that his counsel was deficient or that he was prejudiced. The record of appellant's trial contains no support for his claim that the clerk of the court cried throughout the victims' testimony. Further, the testimony taken at the evidentiary hearing did not address the clerk's conduct during the trial. The only support for this claim was appellant's affidavit in which he stated that the court clerk cried in front of the jury during the victims' testimony. In light of the single averment and the lack of development of further evidence at the evidentiary hearing despite the opportunity to do so, we conclude that the district court did not err in denying appellant's claim as he failed to meet his evidentiary burden of showing that his counsel was ineffective.

Exhibit 122, p. 10 (#26). Petitioner has not rebutted this finding with clear and convincing evidence, and thus this court presumes that the finding is correct. 28 U.S.C. § 2254(e)(1). Given that there was no evidence that the clerk of the court cried in front of the jury, the Nevada Supreme

-15-

Court's determination was a reasonable application of <u>Strickland</u>. Reasonable jurists would not find this conclusion to be debatable or wrong, and the court will not issue a certificate of appealability.

Ground 15 has three components. First, petitioner repeats his claim that counsel should have objected to the filing of the amended information. Second, petitioner argues that counsel did not investigate three other victims who did not testify but whose stories came through in another victim's testimony. On these issues, the Nevada Supreme Court held:

> Eleventh, appellant claimed that his trial counsel was ineffective for failing to adequately prepare and investigate the case. Specifically, he asserted (1) counsel anticipated that appellant would plead guilty to the crimes and thus did not prepare for trial, (2) counsel should have sought the leave of the court for time to investigate the State's new charge and victim, and (3) counsel did not investigate other boys that were mentioned at trial. Appellant failed to establish that his counsel was defective or that he was prejudiced by counsel's failure to investigate. "An attorney must make reasonable investigations or a reasonable decision that particular investigations are necessary." A petitioner asserting a claim that his counsel did not conduct a sufficient investigation bears the burden of showing that he would have benefitted from a more thorough investigation. As noted above, the State did not add a completely new charge and victim, it merely amended an incomplete information to reflect the charges for which appellant had been bound over. As appellant had been bound over on the charge, counsel was able to question the victim about the allegation at the preliminary hearing. Further, appellant failed to identify what facts counsel could have discovered through additional investigation that would have affected the outcome of the trial. Therefore, the district court did not err in denying this claim.

Exhibit 122, pp. 11-12 (#26) (footnotes omitted). The court has already disposed of petitioner's claim regarding the amended information, in ground 4. On the investigation claim, E. H. testified about the night he stayed at a friend's home with petitioner. Present at the home were petitioner, E. H., and three other boys. E. H. testified that when petitioner was pressuring him to engage in oral sex, petitioner "bragged that he did it to [A. P.][3] and [C. L.], "it" being "[p]robably just about most

---

[3]Both prosecution and defense were aware of A. P., but he disappeared some time after petitioner's arrest. Right before trial started, he reappeared. After the jury was empaneled, the prosecution moved to let A. P. testify about what happened to him pursuant to Nev. Rev. Stat. § 48.045, which governs admission of evidence of uncharged acts. The judge ruled that A. P. could testify only as part of the prosecution's rebuttal case. Ex. 11A, pp. 185-202 (#23). A. P. never testified in the trial.

After the jury trial at issue in this action, Petitioner was indicted for four counts of sexual

-16-

sexual things you could think of." Ex. 12A, pp. 190-91 (#23). Counsel objected to the questioning, but he was overruled. E. H. also started to testify about what a third boy told him regarding petitioner's statements, but counsel successfully objected to the hearsay. Id., p. 170 (#23). In light of counsel's actions at trial, petitioner does not identify how additional investigation could have affected the outcome of the trial. The Nevada Supreme Court reasonably applied Strickland. Reasonable jurists would not find this conclusion to be debatable or wrong, and the court will not issue a certificate of appealability.

Third, petitioner argues that counsel should have called as witnesses members of petitioner's family, who could have rebutted the prosecution's argument that petitioner was a predator of children. On the issue of calling family members to testify, the Nevada Supreme Court held:

> Fourteenth, appellant claimed that his counsel was ineffective for failing to call witnesses "who would have refuted the State's claims regarding Petitioner being a child predator." He asserted that members of his family would have testified as such. Appellant did not establish that his counsel was deficient or that he was prejudiced. Appellant did not specifically identify the possible or potential witnesses who would have offered the testimony. Further, he did not allege the specific facts about which the witnesses would have testified that would have refuted the State's allegations. Therefore, we conclude that the district court did not err in dismissing this claim.

Ex. 122, p. 14(#26) (footnote omitted). Petitioner had the burden of proving that counsel was deficient and that he suffered prejudice. In light of the specific accusations leveled against him by the victims, he needed to allege who these witnesses were and what their testimonies would have been. He did not. Under those circumstances, the Nevada Supreme Court reasonably applied Strickland. Reasonable jurists would not find this conclusion to be debatable or wrong, and the court will not issue a certificate of appealability.

---

assault, upon A. P., of a minor under sixteen years of age with use of a deadly weapon. He agreed to plead guilty, pursuant to North Carolina v. Alford, 400 U.S. 25 (1970), to one count of sexual assault. Ultimately, this court denied a habeas corpus petition with respect to that conviction, and the court of appeals affirmed. See Lavoll v. Grigas, 2:01-CV-00635-PMP-(LRL).

In ground 16, petitioner argues that counsel provided ineffective assistance by failing to ensure that the sentences in this case and the sentence in the case involving A. P., described above at page 17 and footnote 3, would run concurrently. On this issue, the Nevada Supreme Court held:

> Seventeenth, appellant claimed that his trial counsel was ineffective for failing to ensure that appellant's sentences ran concurrent with the sentences in another case that was also handled by the public defender's office. Appellant failed to demonstrate that his counsel was deficient or that he was prejudiced. The record indicated that appellant's counsel argued for concurrent sentences at appellant's sentencing hearing. Moreover, the district court decides whether sentences are imposed consecutively or concurrently. Therefore, the district court did not err in denying this claim.

Exhibit 122, pp. 15-16 (#26) (footnotes omitted). In an omitted footnote, the Nevada Supreme Court noted that the transcript of the sentencing hearing in this case is not available because court reporters are required by law to keep their notes for eight years and because the transcript was requested after that eight-year limit. Counsel did all that he could do to ensure that the sentences in this case run concurrently with the sentence in the case involving A. P., but the ultimate decision was with the district court. The Nevada Supreme Court reasonably applied Strickland.

Additionally, this court has the benefit of petitioner's habeas corpus petition that challenged the judgment of conviction in the case involving A. P., and that petition shows that ground 16 has no basis in fact. The sentence in the case involving A. P., C146525, does run concurrent with the sentence in the case at issue, C144545. See Lavoll v. Grigas, 2:01-CV-00635-PMP-(LRL), Third Amended Petition, Exhibits 4, 5 (#65). Ground 16 is without merit. Reasonable jurists would not find this conclusion to be debatable or wrong, and the court will not issue a certificate of appealability.

IT IS THEREFORE ORDERED that the petition for a writ of habeas corpus (#7) is **DENIED**. The clerk of the court shall enter judgment accordingly.

IT IS FURTHER ORDERED that a certificate of appealability is **DENIED**.

DATED: November 30, 2010.

PHILIP M. PRO
United States District Judge

-18-